UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EARL EUGENE HAYNES, CDCR #H-23481,<br><br>Plaintiff,<br><br>vs.<br><br>Dr. JOHN CHAU, Physician & Surgeon; Dr. D. ROBERTS, Chief Medical Executive; Sgt. M. ARTEGA, Correctional Sergeant,<br><br>Defendants. | Case No.: 3:19-cv-02257-JAH-KSC<br><br>**ORDER:**<br><br>**1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 2]**<br><br>**2) DISMISSING DEFENDANTS AND CLAIMS PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A(b)**<br><br>**3) GRANTING MOTION TO AMEND AND DENYING MOTION FOR TEMPORARY RESTRAINING ORDER [ECF Nos. 6, 8]**<br><br>**AND**<br><br>**4) DIRECTING U.S. MARSHAL TO EFFECT SERVICE UPON DEFENDANT CHAU PURSUANT TO 28 U.S.C. § 1915(d) AND Fed. R. Civ. P. 4(c)(3)** |

Earl Eugene Haynes ("Plaintiff"), currently incarcerated at Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, is proceeding pro se in this civil rights action filed pursuant to 42 U.S.C. § 1983. *See* Compl., ECF No. 1. Plaintiff seeks

to sue his[1] treating physician at RJD, Dr. John Chau, RJD's Chief Medical Executive, Dr. D. Roberts, and Correctional Sergeant M. Artega, alleging they all failed to provide him adequate medical care and/or accommodations for a ventral hernia he developed sometime between June and September 2019. *See id.* at 10–16.

Plaintiff has not paid the filing fee required by 28 U.S.C. § 1914(a); instead, he has filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a). *See* ECF No. 2. He has also submitted another document entitled "Order to Show Cause & Temporary Restraining Order," which the Court accepted for filing in light of his pro se status despite its non-compliance with Local Civil Rules 7.1.b and 7.1.f.1, and construes as a Motion for a Temporary Restraining Order ("TRO") pursuant to Fed. R. Civ. P. 65. *See* ECF Nos. 5, 6; *Bernhardt v. Los Angeles County*, 339 F.3d 920, 925 (9th Cir. 2003) ("Courts have a duty to construe pro se pleadings liberally, including pro se motions as well as complaints."). Plaintiff has since filed an additional Motion seeking leave to amend his previous Motion for TRO. *See* ECF No. 8.

## I. Motion to Proceed IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[2] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner granted leave to proceed

---

[1] The medical records Plaintiff attaches and incorporates by reference to his Complaint indicate he is a male to female transgender inmate and they use both male and female pronouns when referring to him/her. However, Plaintiff uses only male pronouns in the body of his pleading; therefore, the Court will do the same until he requests otherwise. *See* Compl. at 12, 15–16–17.

[2] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June 1, 2016). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

2

IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, __ U.S. __, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for ... the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

In support of his IFP Motion, Plaintiff has submitted a copy of his CDCR Inmate Statement Report as well as a Prison Certificate completed by an accounting officer at RJD. *See* ECF No. 3; 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. These statements show Plaintiff maintained an average monthly balance of $254.23, and had $163.28 in average monthly deposits credited to his account over the 6-month period immediately preceding the filing of his Complaint. His available balance as of November 26, 2019, however, was only $22.53. *See* ECF No. 3 at 1, 3.

Therefore, the Court **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2) and assesses his initial partial filing fee to be $50.84 pursuant to 28 U.S.C. § 1915(b)(1). Because his available balance at the time of filing was insufficient to cover this initial fee, however, the Court will direct the Secretary of the CDCR, or his designee, to collect it *only if sufficient funds are available in Plaintiff's account at the time this Order is*

3

3:19-cv-02257-JAH-KSC

*executed*. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Bruce*, 136 S. Ct. at 630; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay ... due to the lack of funds available to him when payment is ordered."). The remaining balance of the $350 total fee owed in this case must be collected by the agency having custody of the prisoner and forwarded to the Clerk of the Court pursuant to 28 U.S.C. § 1915(b)(2).

## II. Initial Screening per 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)

### A. Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter,

4

3:19-cv-02257-JAH-KSC

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

Finally, in deciding whether Plaintiff has stated a plausible claim for relief, the Court may consider exhibits attached to his Complaint. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citing *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*, 583 F.2d 426 (9th Cir. 1978) ("[M]aterial which is properly submitted as part of the complaint may be considered" in ruling on a Rule 12(b)(6) motion to dismiss.)).

B.   Plaintiff's Factual Allegations

On May 29, 2019, Plaintiff was admitted to Alvarado Hospital from RJD for a hiatal hernia[3] surgery performed by Justin King, M.D. *See* Compl. ¶¶ 9–10. While in post-op recovery at Alvarado, and still under Dr. King's care, Plaintiff developed a "fascial dehiscence within the incision site," which required a second surgery on June 4, 2019. *Id.* ¶ 13. On June 5, 2019, Plaintiff was discharged from Alvarado to RJD's Correctional Treatment Center ("CTC"), where he remained in post-op recovery and

---

[3] "A hiatal hernia occurs when part of the stomach pushes upward through the small opening (hiatus) through which the esophagus passes on its way to the stomach." *Alvarez v. Hashemi*, No. 1:16–CV–00203–AWI–JLT PC, 2019 WL 1099838, at *9 (E.D. Cal. Mar. 7, 2019).

under the care of Dr. D. Clayton. *Id.* ¶¶ 15–16.[4] On June 20, 2019, he was returned to RJD's E-Facility for further post-op "recovery, wound care, & monitoring" by Dr. Chau. *Id.* ¶ 17.

On June 25, 2019, Plaintiff continued to experience abdominal pain and "noticed the first signs of swelling & distension." *Id.* ¶ 19. He was examined by Dr. Chau who noted Plaintiff's complaints of "mild abdominal discomfort," but "no fever or chills." *See* Pl.'s Ex. F, ECF No. 1 at 21. Dr. Chau's progress notes also included an "Assessment Plan" indicating a "follow–up with surgery" had been scheduled in 2 days. *Id.* at 22.[5] Plaintiff claims, however, that "27 June 2019 came & went with no follow up." *See* Compl., ¶ 20.

On July 11, 2019, Plaintiff was summoned or "ducated" to see Dr. Chau for a post-op consultation "initiated by Dr. King, who supervised [his] suture removal." *Id.* ¶ 21. Plaintiff claims he again renewed his complaints of pain, discomfort, swelling and "noticeable" distension, but Dr. Chau "did nothing," except reschedule him for a later appointment, and "instruct[] [him] to use an abdominal binder at all times." *Id.*, *see also* Pl.'s Ex. H, ECF No. 1 at 25.[6]

///

---

[4] Neither Dr. King nor Dr. Clayton are named as Defendants.

[5] The Court notes that in addition to Plaintiff's "large hiatal hernia status post open surgery and fundoplication 5-29-19," Dr. Chau's July 11, 2019 Progress Notes also describe Plaintiff as a "71 year-old male to female transgender, morbidly obese," and cites a "Problem List" of "Past Medical History Ongoing" concerns including more than a dozen other medical conditions, including avascular necrosis of the hip, chronic GERD, constipation and lower back pain, degenerative disc disease, diabetes mellitus type 2, dyslipidemia, foraminal stenosis of the lumbar region, gender dysphoria, BPH, COPD, hypertension, major depressive disorder, mild sleep apnea, acute chest pain, and "noncompliance with medical treatment and regimen." *See* Pl.'s Ex. H, ECF No. 1 at 25.

[6] An abdominal binder or truss "is a supportive undergarment that physicians recommend as non-surgical way to ease discomfort or pain from a hernia because it applies gentle pressure on the hernia and keeps it in place." *Wilkins v. Magat*, No. 15-CV-01706-YGR (PR), 2018 WL 4638699, at *15 n.31 (N.D. Cal. Sept. 25, 2018) (citing https://www.webmd.com/digestive-disorders/qa/what-are-nonsurgical-treatments-for-a-hernia (last visited September 4, 2018)).

On September 4, 2019, Plaintiff was again examined by Dr. Chau who noted he had tolerated the May 29, 2019 procedure well, but "unfortunately now ha[d] a ventral hernia." *See* Compl. ¶ 23 & Ex. I at 28.[7] Dr. Chau reported the new hernia was "soft and redu[c]ible," told Plaintiff "not to worry about it," and recommended he "use an abdominal truss on a trial basis." Compl. ¶ 25 & Ex. I at 28.

Plaintiff continued to experience pain, discomfort, and anxiety due to "the worsening incision area manifesting swelling, tenderness, and redness," *see* Compl. ¶ 28, and claims Dr. Chau "was completely aware [that] the incision scar had separated a second time in 60-days, allowing [Plaintiff's] small bowel to protrude." *Id.* ¶ 29. Therefore, Plaintiff submitted a "Health Care Service Request" or CDCR Form 7362, "explaining the dire circumstances that were becoming worse with pronounced abdominal distension." *Id.* ¶ 30.

On September 26, 2019, Plaintiff was again examined by Dr. Chau, who reported that Plaintiff "now present[ed] with [a] large ventral hernia," and complaining of "discomfort" and a "burning sensation over [the] area" that "bother[ed] him throughout the night." *See* Compl. ¶ 31, Pl.'s Ex. J, ECF No. 1 at 32. Dr. Chau's Progress Notes taken during the September 26, 2019 consult further indicate Plaintiff "wish[ed] to consider possible surgery for ventral hernia repair," and they include an order requesting that Plaintiff be referred for "general surgery." *See* Pl.'s Ex. J, ECF No. 1 at 32. Plaintiff claims Dr. Chau's Progress Notes "grossly distort the tenor [of] the consultation," fail to describe it as "contentious," and "downplay the severity of [his] hernia." Compl. ¶¶ 31–32.

///

---

[7] "A ventral hernia is a bulge of tissues through an opening of weakness within [the] abdominal wall muscles. It can occur at any location on [the] abdominal wall. Many are called incisional hernias because they form at the healed site of past surgical incisions. Here abdominal wall layers have become weak or thin, allowing for abdominal cavity contents to push through." *See* https://www.healthline.com/health/ventral-hernia (last visited March 4, 2020).

On October 15, 2019, Plaintiff claims he consulted with Dr. R. Zhang,[8] the "physician[n] on duty." *Id.* ¶ 34. Plaintiff repeated his complaints of pain, swelling, and discomfort, but Zhang also noted his hernia remained "soft and reducible," and that Plaintiff "seem[ed] comfortable throughout the interview." Zhang informed Plaintiff of a "pending surgical consultation at the end of the month," and Zhang's Progress Notes indicate Plaintiff "agreed with the plan." *Id.* at 35; *cf.* Pl.'s Ex. K, ECF No. 1 at 35–36. However, Plaintiff claims Dr. Zhang's description of the October 15, 2019 exam, like Dr. Chau's, are "mislead[ing]," "self-serving," and a "complete distortion of the truth," since he "has no option to disagree & is at the professional mercy of medical staff regarding any scheduling." *Id.* ¶¶ 35-36.

At the time he filed his Complaint no surgery had yet to be scheduled. *Id.* ¶ 37. Plaintiff contends his "new hernia is a medical emergency requiring immediate medical intervention," "irrespective of Dr. Chau's blasé attention." *Id.* ¶ 33.

C. 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Naffe v. Frye*, 789 F.3d 1030, 1035-36 (9th Cir. 2015).

D. Supervisory Liability – Defendant D. Roberts

In addition to Dr. Chau, who served as the E–Facility's treating physician responsible for providing Plaintiff with post-operative "recovery, wound-care & monitoring," *see* Compl. ¶¶ 17–33, Plaintiff also names D. Roberts, RJD's Chief Medical Executive, as a Defendant. *Id.* at 2. Plaintiff identifies Roberts by his title, and contends he is liable for failing to "oversee the operations of the Medical Department to ensure

---

[8] Dr. Zhang is not named as a Defendant.

prisoners receive proper medical care." *Id.* at ¶¶ 6, 46–48. However, Plaintiff does not mention Roberts again in the body of his pleading, and does not explain the role he or she may have played in any decisions Dr. Chau is alleged to have made regarding his medical care or need for a second hernia surgery. "[A] defendant may not be held liable under § 1983 merely because he had certain job responsibilities." *Hernandez v. Aranas*, No. 218CV00102JADBNW, 2020 WL 569347, at *4 (D. Nev. Feb. 4, 2020) (citing *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)).

In short, Plaintiff fails to include any "further factual enhancement" to show how, or to what extent, Dr. Roberts may be held personally liable for any constitutional injury. *See Iqbal,* 556 U.S. at 676-77; *Jones v. Comm'ty Redev. Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984) (even pro se plaintiff must "allege with at least some degree of particularity overt acts which defendants engaged in" in order to state a claim). Plaintiff does claim Roberts is responsible to "hire & employ doctors for the operation of State Prisons," *see* Compl., at 2, but "[v]icarious liability is inapplicable to … § 1983 suits, [and] a plaintiff must plead that each Government-official defendant, through [his] own individual actions, has violated the Constitution," in order to plead a plausible claim for relief. *Iqbal*, 556 U.S. at 676; *see also Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (supervisor may be held liable under Section 1983 only if there is "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation") (citations and internal quotation marks omitted); *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir.1979) (when a named defendant holds a supervisorial position, the causal link between the defendant and the claimed constitutional violation must be specifically alleged); *Victoria v. City of San Diego*, 326 F. Supp. 3d 1003, 1013 (S.D. Cal. 2018) ("Liability under § 1983 arises only upon a showing of personal participation by the defendant.").

Plaintiff's Complaint is simply devoid of any factual allegations sufficient to show Dr. Roberts "participated in or directed [Dr. Chau's alleged] violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th

Cir.1989); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009); *accord Starr*, 652 F.3d at 1207–08 ("A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.").

For these reasons, the Court dismisses Dr. Roberts as a party to this action *sua sponte* based on Plaintiff's failure to state a plausible claim for relief against him pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), (iii) and 28 U.S.C. § 1915A(b)(1), (2); *Lopez*, 203 F.3d at 1126-27; *Wilhelm*, 680 F.3d at 1121.

### E. ADA Claims–Sgt. M. Artega

Plaintiff also names Sgt. M. Artega as a Defendant, and claims Artega is the "ADA Coordinator for E-Facility." *See* Compl. ¶ 7. Plaintiff does not specify what role Artega played with respect to his medical care or his accommodations, but he concludes Artega is "responsible" for ensuring disabled prisoners receive "services, programs & activities" under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and contends "medical care falls under 'services,'" and therefore, Artega may be held liable for failing to meet his "disability-related needs." *Id.* ¶ 52.

The ADA applies to prisons and jails. *See* 42 U.S.C. § 12131(1)(B); *U.S. v. Georgia* 546 U.S. 151, 154 (2006). In order to state a claim under Title II of the ADA, however, Plaintiff must allege:

> (1) he 'is an individual with a disability;' (2) he 'is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;' (3) he 'was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;' and (4) 'such exclusion, denial of benefits, or discrimination was by reason of [his] disability.'

*O'Guinn v. Lovelock Correctional Center*, 502 F.3d 1056, 1060 (9th Cir. 2007) (citing *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004) (quoting *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) (per curiam)).

Even assuming Plaintiff's ventral hernia is a qualified disability, and that he is otherwise entitled to participate or benefit from some RJD service, program, or activity, Plaintiff does not allege that Sgt. Artega, or any other named Defendant, discriminated against him *because of* his hernia. *O'Guinn*, 502 F.3d at 1060; *see also Weinreich v. Los Angeles Cty. Metro. Transp. Auth.*, 114 F.3d 976, 978-79 (1997) (requiring plaintiff to plead and prove the defendant's actions supporting a Rehabilitation Act claim were taken "solely by reason of disability."). Title II of the ADA "prohibit[s] discrimination on the basis of disability." *Lowell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). Medical treatment, the lack of treatment, an alleged misdiagnosis, or allegations of inadequate care alone do not support an ADA claim. *See e.g., Marlor v. Madison County Idaho*, 50 Fed. App'x 872, 874 (9th Cir. 2002). Because the ADA prohibits discrimination because of disability, not inadequate treatment for a disability, as Plaintiff appears to allege here with respect to his post-operative care and/or alleged need for a second hernia surgery, his purported ADA claim fails. *See Simmons*, 609 F.3d at 1022, *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016); *see also Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he Act would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners....The ADA does not create a remedy for medical malpractice."). Inadequate treatment or lack of treatment for Plaintiff's medical condition does not in itself suffice to create liability under the ADA. *Tandel v. Cty. of Sacramento*, 2015 WL 1291377, at *18 (E.D. Cal. Mar. 20, 2015); *Bryant*, 84 F.3d at 249 ("No discrimination is alleged; Bryant was not treated worse because he was disabled. His complaint is that he was not given special accommodation.").

Finally, Plaintiff may not pursue an ADA claim for damages against any of the individually named Defendants, including Sgt. Artega, because there is no individual liability under Title II. *See Heinke v. County of Tehama Sheriff's Dept.*, No. CVI S-12-2433 LKK/KJN, 2013 WL 3992407, at *7 (E.D. Cal. Aug.1, 2013). The ADA's definition of "public entity" does not include individuals. *See Hardwick v. Curtis*

11

*Trailers, Inc.*, 896 F. Supp. 1037, 1038-39 (D. Or. 1995) (individual liability is precluded under ADA Title II) (citing *Miller v. Maxwell's Intern., Inc.*, 991 F.2d 583 (9th Cir. 1993)); *see also Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999); 42 U.S.C. § 12131(1); *Vinson v. Thomas*, 288 F.3d 1145 (9th Cir. 2002) ("[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in [his or] her individual capacity to vindicate rights created by Title II of the ADA ..."); *Weathers v. Hagemeister-May*, No. 1:13-CV-01932-AWI, 2014 WL 309444, at *4 (E.D. Cal. Jan. 28, 2014).

For these reasons, the Court finds Plaintiff has failed to allege a plausible claim for relief under the ADA, and also dismisses Sgt. Artega as a party to this action *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1). *See Lopez*, 203 F.3d at 1126-27; *Wilhelm*, 680 F.3d at 1121.

    F.    <u>Eighth Amendment Inadequate Medical Care Claims – Dr. Chau</u>

With respect to the gravamen of Plaintiff's Complaint and his Eighth Amendment inadequate medical care claims against Dr. Chau, however, the Court finds his Complaint contains plausible Eighth Amendment allegations sufficient to surpass the "low threshold" set for initial screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (prison officials' deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment).

While it is well established that "a mere difference of medical opinion ... [is] insufficient, as a matter of law, to establish deliberate indifference," *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (alterations in original) (citation omitted), in some cases a prisoner may state a claim of deliberate indifference to medical needs based on a difference of medical opinion. *See, e.g., Gould v. California Dep't of Corr. & Rehab.*, No. 2:18-CV-1981-JAM-EFB P, 2020 WL 704000, at *3 (E.D. Cal. Feb. 12, 2020). To do so, the prisoner must allege that "the course of treatment the doctors chose was medically unacceptable under the circumstances," and that they "chose this course in

conscious disregard of an excessive risk to [the prisoner's] health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citations omitted). Under this standard, "denying an inmate a surgery without performing an honest or sufficient medical evaluation of the patient might constitute deliberate indifference." *Gould*, 2020 WL 704000, at *3 (citing *Jackson,* 90 F.3d at 332). "Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which prison physicians provide medical care.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) ((quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)). To establish a claim of deliberate indifference arising from a delay in providing care, the prisoner must allege the delay was harmful. *See Berry v. Bunnell*, 39 F.3d 1056, 1057 (9th Cir. 1994); *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

Here, Plaintiff claims Dr. Chau was aware of his pain, discomfort, swelling, and "noticeable" distention as early as July 11, 2019, *see* Compl. ¶ 21, that he had developed a ventral hernia by September 4, 2019, *id.* ¶ 25, and "was completely aware [that] the incision scar had separated a second time in 60-days, allowing [Plaintiff's] small bowel to protrude" when he examined him on that day. *Id.* ¶ 29. Nevertheless, Plaintiff contends Dr. Chua failed to address his complaints of pain, discomfort, burning, and anxiety, and instead "downplay[ed] the severity of [his] hernia" until September 29, 2019, when it had then become "large," his incision area had worsened, and he presented with a "pronounced abdominal distention," and a "red, open, & raw" incision "showing what appear[ed] to be bowel underneath the skin." *See id.* ¶¶ 28–32.

These allegations, taken in the light most favorable to Plaintiff, are sufficient to support a reasonable inference that Dr. Chau's actions and/or inactions went beyond mere difference in medical opinion and rose to the level of deliberate indifference. *Iqbal*, 556 U.S. at 678.

Therefore, the Court will order the U.S. Marshal to effect service upon Dr. J. Chau on Plaintiff's behalf. *See* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and

serve all process, and perform all duties in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) ("[T]he court may order that service be made by a United States marshal or deputy marshal ... if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915.").[9]

## III. Motion to Amend and Motion for TRO

Finally, in both his original Motion for TRO and his Motion to Amend, Plaintiff requests immediate injunctive relief "requiring Defendants to arrange for emergency treatment by an outside medical clinic or facility," and to "schedule ventral hernia repair" surgery. *See* ECF No. 6 at 7; ECF No. 8 at 3–4.

### A. Standard of Review

Procedurally, a federal district court may issue emergency injunctive relief only if it has personal jurisdiction over the parties and subject matter jurisdiction over the lawsuit. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) (noting that one "becomes a party officially, and is required to take action in that capacity, only upon service of summons or other authority-asserting measure stating the time within which the party served must appear to defend."). The court may not attempt to determine the rights of persons not before it. *See, e.g., Hitchman Coal & Coke Co. v. Mitchell*, 245 U.S. 229, 234-35 (1916); *Zepeda v. INS*, 753 F.2d 719, 727-28 (9th Cir. 1983); *Lathrop v. Unidentified, Wrecked & Abandoned Vessel*, 817 F. Supp. 953, 961 (M.D. Fl. 1993); *Kandlbinder v. Reagan*, 713 F. Supp. 337, 339 (W.D. Mo. 1989); *Suster v. Marshall*, 952 F. Supp. 693, 701 (N.D. Ohio 1996); *see also Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) (injunctive relief must be "narrowly tailored to give only the relief to which plaintiffs are entitled"). An injunction binds only "the parties to the action," their "officers, agents, servants, employees, and attorneys," and "other persons who are in active concert or participation." Fed. R. Civ. P. 65(d)(2)(A)-(C).

---

[9] Plaintiff is cautioned that "the sua sponte screening and dismissal procedure is cumulative of, and not a substitute for, any subsequent Rule 12(b)(6) motion that [a defendant] may choose to bring." *Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007).

The substantive purpose of a TRO is to preserve the status quo before a preliminary injunction hearing may be held; its provisional remedial nature is designed merely to prevent irreparable loss of rights prior to judgment. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). But the legal standard that applies to a motion for a TRO is the same as a motion for a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

Substantively, "[a] preliminary injunction is an extraordinary remedy never awarded as of right, and the grant of a preliminary injunction is a matter committed to the discretion of the trial judge[.]" *Epona v. Cty. of Ventura*, 876 F.3d 1214, 1227 (9th Cir. 2017) (internal quotation marks and citations omitted). "'A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Glossip v. Gross*, __ U.S. __, 135 S. Ct. 2726, 2736-37 (2015) (*quoting Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)). "Under *Winter*, plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction." *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131 (9th Cir. 2011).

In addition, the PLRA requires prisoners to satisfy additional requirements when seeking preliminary injunctive relief against prison officials:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2).

///

Section 3626(a)(2) places significant limits upon a court's power to grant preliminary injunctive relief to inmates, and "operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators—no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Gilmore v. People of the State of California*, 220 F.3d 987, 998-99 (9th Cir. 2000).

### B. Application to Plaintiff's Case

First, the Court notes Plaintiff's case is still in its preliminary screening stage, the United States Marshal has yet to effect service upon Dr. Chau on his behalf, and Plaintiff has not "certified in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B). Indeed, the Court has no personal jurisdiction over any Defendant at this time. *See* Fed. R. Civ. P. 65(d)(2); *Murphy Bros., Inc.*, 526 U.S. at 350; *Zepeda*, 753 F.2d at 727-28.

Second, even if the Court had personal jurisdiction over Dr. Chau, Plaintiff has failed to establish "specific facts in an affidavit or a verified complaint [to] clearly show that immediate and irreparable injury, loss, or damage will result to [him] before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A); *Winter*, 555 U.S. at 20; *Alliance for the Wild Rockies*, 632 F.3d at 1131. "The fact that plaintiff has met the pleading requirements allowing him to proceed with the complaint does not, *ipso facto*, entitle him to a preliminary injunction." *Claiborne v. Blauser*, No. CIV S-10-2427 LKK, 2011 WL 3875892, at *8 (E.D. Cal. Aug. 31, 2011), *report and recommendation adopted*, No. CIV S-10-2427 LKK, 2011 WL 4765000 (E.D. Cal. Sept. 29, 2011).

Instead, to meet the "irreparable injury" requirement, Plaintiff must do more than plausibly *allege* imminent harm; he must demonstrate it. *Caribbean Marine Servs. Co., Inc. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988). This requires Plaintiff to demonstrate by specific facts and evidence that there is a credible threat of immediate and irreparable harm. *See* Fed. R. Civ. P. 65(b). "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Carribbean*

*Marine Servs. Co.*, 844 F.3d at 674-75.

Here, Plaintiff claims Dr. Chau has failed to adequately address his medical needs by downplaying his complaints, inaccurately documenting his condition, and by failing to arrange or ensure he would be scheduled for a ventral hernia surgery on an "emergency" basis. *See* Compl. ¶¶ 33–34. In his Motion to Amend his TRO, Plaintiff contends his pain level has increased, he is unable to function at a prison job assignment, and remains wheelchair bound despite an "obvious need for repair surgery." *See* ECF No. 8 at 3. Plaintiff concludes that "[t]he lack of diligent monitoring … is not only disconcerting, but could be life-threatening possibly causing irreparable harm." *Id.*

While the Court must construe the allegations in Plaintiff's Complaint in the light most favorable to him in order to determine whether he has sufficiently pleaded a plausible claim for relief against Dr. Chua under the Eighth Amendment, *see Iqbal*, 556 U.S. at 679, these claims alone do not *establish* that he currently faces the type of immediate and credible threat of irreparable injury necessary to justify extraordinary injunctive relief at this stage of the case. *Lyons*, 461 U.S. at 102; *Winter*, 129 S. Ct. at 375–76; *Alliance for the Wild Rockies*, 632 F.3d at 1131 ("Under *Winter*, plaintiff[ ] must establish that irreparable harm is likely, not just possible."); *Goldie's Bookstore, Inc. v. Superior Court of State of Cal.*, 739 F.2d 466, 472 (9th Cir. 1984) ("Speculative injury does not constitute irreparable injury."). *Rigsby v. State*, No. CV 11-1696-PHX-DGC, 2013 WL 1283778, at *5 (D. Ariz. Mar. 28, 2013) (denying prisoner's TRO based on fear of potential future injury based on past assaults); *Chappell v. Stankorb*, No. 1:11-CV-01425-LJO, 2012 WL 1413889, at *2 (E.D. Cal. Apr. 23, 2012) (denying injunctive relief where prisoner's claims of injury based on current or future housing decisions were nothing "more than speculative."), *report and recommendation adopted*, No. 1:11-CV-01425-LJO, 2012 WL 2839816 (E.D. Cal. July 9, 2012). A presently existing actual threat must be shown, even though injury need not be certain to occur. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130-31 (1969); *FDIC v. Garner*, 125 F.3d 1272, 1279-80 (9th Cir. 1997); *Caribbean Marine*, 844 F.2d at 674.

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)); *see also Ctr. for Competitive Politics v. Harris*, 784 F.3d 1307, 1312 (9th Cir. 2015) (movant "bears the heavy burden of making a clear showing' that it [i]s entitled to a preliminary injunction"). At this early stage of the case, while Plaintiff has sufficiently pleaded a plausible claim for relief with respect to Dr. Chau, neither his Complaint, the medical records he has attached as exhibits, nor his Motion for TRO, make the clear showing necessary to justify the "drastic remedy" of immediate injunctive relief. *See Lopez*, 680 F.3d at 1072; 11A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2949 (3d ed. 2019) ("Evidence that goes beyond the unverified allegations of the pleadings and motion papers must be presented to support or oppose a motion for a preliminary injunction."); *see also Herb Reed Enterprises, LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1251 (9th Cir. 2013) (a party seeking injunctive relief "must proffer evidence sufficient to establish a likelihood of irreparable harm"); *see also Tilei v. California Dep't of Correction & Rehab.*, No. 3:19-CV-1708-WQH-KSC, 2020 WL 819094, at *3 (S.D. Cal. Feb. 19, 2020) (finding claims that prisoner was "likely to suffer 'more' irreparable harm or even death" after a traumatic spinal injury speculative, not clearly supported by the record, and therefore insufficient to warrant emergency injunctive relief).

Therefore, while the Court **GRANTS** Plaintiff's Motion to Amend his Motion for TRO (ECF No. 8), it must **DENY** his Motion for TRO (ECF No. 6) without prejudice pursuant to Fed. R. Civ. P. 65.

### IV. Conclusion and Orders

For all the reasons discussed, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

///

2. **ORDERS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's trust account the $50.84 initial filing fee assessed, *if those funds are available at the time this Order is executed*, and to forward whatever balance remains of the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of the Court each time the amount in Plaintiff's account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Ralph Diaz, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

4. **GRANTS** Plaintiff's Motion to Amend his Motion for TRO (ECF No. 8), but **DENIES** his Motion for TRO without prejudice pursuant to Fed. R. Civ. P. 65 (ECF No. 6).

5. **DISMISSES** Plaintiff's supervisorial liability and ADA claims *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) and **DIRECTS** the Clerk of the Court to terminate the action with respect to Defendants D. ROBERTS and M. ARTEGA.

6. **DIRECTS** the Clerk to issue a summons as to Plaintiff's Complaint (ECF No. 1) upon Dr. J. CHAU and forward it to Plaintiff along with a blank U.S. Marshal Form 285 for this Defendant. In addition, the Clerk will provide Plaintiff with a certified copy of this Order, a certified copy of his Complaint (ECF No. 1), and a summons so that he may serve Dr. J. CHAU. Upon receipt of this "IFP Package," Plaintiff must complete the USM Form 285 as completely and accurately as possible, *include an address where Dr. J. CHAU may be found and/or subject to service* pursuant to S.D. Cal. CivLR 4.1c., and return it to the United States Marshal according to the instructions the Clerk provides in the letter accompanying his IFP package.

7. **ORDERS** the U.S. Marshal to serve a copy of the Complaint (ECF No. 1) and summons upon Dr. J. CHAU as directed by Plaintiff on the USM Form 285 provided

to him. All costs of that service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

8. **ORDERS** Defendant, once he has been served, to reply to Plaintiff's Complaint within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a). *See* 42 U.S.C. § 1997e(g)(2) (while a defendant may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its sua sponte screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and thus, has made a preliminary determination based on the face on the pleading alone that Plaintiff has a "reasonable opportunity to prevail on the merits," defendant is required to respond).

9. **ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to serve upon Defendant, or if appearance has been entered by counsel, upon Defendant's counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b). Plaintiff must include with every original document he seeks to file with the Clerk of the Court, a certificate stating the manner in which a true and correct copy of that document has been served on Defendant or his counsel, and the date of that service. *See* S.D. Cal. CivLR 5.2. Any document received by the Court which has not been properly filed with the Clerk or which fails to include a Certificate of Service upon the Defendant, or his counsel, may be disregarded.

**IT IS SO ORDERED**.

Dated: March 16, 2020

Hon. John A. Houston
United States District Judge